IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>JOSHUA RODRIQUEZ (02),<br><br>        Defendant. | Case No. 21-20017-02-DDC |

**MEMORANDUM AND ORDER**

      Defendant Joshua Rodriquez pleaded guilty to Conspiracy to Commit Wire Fraud, a Class C Felony for violating 18 U.S.C. §§ 1343 and 1349.  His Plea Agreement admitted that defendant "Rodriquez falsely claimed that he operated a roofing/siding business and falsely claimed that he had seven employees working for him."  Doc. 47 at 2.  He was convicted—in the words of this same Plea Agreement—of conspiring "to defraud [the] SBA by filing false and fraudulent application for PPP and Economic Injury Disaster Loan (EIDL) funds."  *Id.*  The court sentenced him to spend 18 months in federal prison and then serve a two-year term of supervised release (TSR).  Doc. 56 at 2–3.  Also, and more pertinent here, the Judgment ordered him to pay restitution of $104,833, payable to Cross River Bank and the Small Business Administration.  *Id.* at 6.

      The parties report that Mr. Rodriquez has finished serving his custody sentence and began serving his TSR on May 26, 2023.  Mr. Rodriquez's filing outlines that he has performed splendidly on supervision, complied with all drug-testing, and committed no new offenses.  *See* Doc. 78 at 2.  He reports he has improved his employment prospects, securing a Commercial Driver's License and working as a driver for Western Express, Inc.  *Id.*  Finally, Mr. Rodriquez contends that his TSR's travel limitation "prevent[s] [him] from reaching his full earning

potential and disqualify[ies] him from many truck-driving opportunities." *Id.* at 4. The government doesn't challenge defendant's assertions. Instead, it contends that his report about this TSR conduct captures less than the whole truth. The untold truth, as the government reports it, consists of three parts.

*One*, Mr. Rodriquez still owes $103,728 in unpaid restitution. Doc. 79 at 1. *Two*, Mr. Rodriquez inherited a little more than $30,000 from an uncle in November 2023, some six months after he began his serving his TSR. *Id.* at 2. Specifically, defendant's bank account shows a $30,593 deposit on November 13, 2023. *Id.* at 3. *Last*, Mr. Rodriquez spent the lion's share of this inheritance—specifically, more than $27,000—within five days of receiving it. *See id.* The government's filing specifies the uses that defendant made of this money. And while the court won't repeat them all, here are some examples of the government's proffer:

- $1,300 withdrawn by ATM debits
- $9,000 cash withdrawal
- $4,000 "CashApp" to "Joshua Rodriqu"
- $1,000 EVI*CashClub Wallet[1]
- $4,800 Cash App to "Marko Hughes"
- $1,547 Tommy Bahama
- $1,520 TMobile*Web Upgrade, and
- $926 "ITM Virtual Deposit"

---

[1] Searching for references to "EVI*CashClub Wallet" leads to a company website for "EVERI." EVERI describes CashClub Wallet as technology that allows casino operators to provide patrons with cashless payment and digital gaming, including "online sports betting, iGaming or social gaming." *See Everi Integrates CashClub Wallet® with Shift4*, EVERI, everi.com/everi-integrates-cashclub-wallet-with-shift4/ (last visited on January 27, 2025).

*Id.*  The government asserts that the "United States had a lien on the inheritance pursuant to 18 U.S.C. 3613(c)." *Id.*  It also contends that if Mr. Rodriquez had fulfilled his obligations under the Plea Agreement and § 3664(k), "the full amount of the inheritance would have been collected an[d] applied toward restitution." *Id.*  Mr. Rodriquez's filing doesn't address the inheritance (or report how he spent its proceeds).

**Analysis**

The pertinent statute authorizes the court, "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)" to terminate a term of supervised release after one year of supervision.  18 U.S.C. § 3583(e).  The referenced factors in § 3553(a) are those considering the:  nature and circumstances of offense and defendant's history and characteristics; need to afford adequate deterrence to criminal conduct; need to protect public from defendant's further crimes; kinds of sentence and the sentencing range established for the applicable category of defendant, as set out in the guidelines (and other specified factors in subsections (A) and (B)); any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to the offense's victims.  The court has considered all these factors but concludes, in the end, that two of these factors dominate the analysis here—"the need to provide restitution to any victims of the offense" (§ 3553(a)(7)) and the defendant's history and characteristics (§ 3553(a)(1)).

On the restitution factor, the Judgment against Mr. Rodriquez ordered that he "must pay" restitution of $104,833 to specified victims.  Doc. 56 at 6.  So far, he's paid $105 of that obligation—about one-tenth of one percent.  Doc. 79 at 2 n.1.  The Judgment also adopts several special conditions that furnish the United States Probation Office with means to supervise

defendant's progress on his restitution obligation.  Doc. 56 at 3.  Given Mr. Rodriquez's meager effort to pay what he owes, there's no good reason to eliminate that oversight.  On the other dominant factor—history and characteristics—the financial facts reported by the government don't flatter Mr. Rodriquez.  When a relative's death provided him a meaningful inheritance, Mr. Rodriquez elected to spend that windfall as quickly as he could.  Perhaps he spent the inheritance quickly to evade detection and put it beyond the reach of efforts to enforce payment.  But the court doesn't need to reach that issue to decide the current motion.  Instead, the court merely must decide what those actions say about defendant's characteristics.  They manifest Mr. Rodriquez's disregard for his legal duties and suggest he hasn't fully accepted responsibility for the consequences of his illegal conduct.

In sum, the pertinent factors disfavor an early end to defendant's TSR.

## Conclusion

Defendant Joshua Rodriquez has failed to demonstrate that the court should terminate his TSR early.  The court thus denies his motion (Doc. 78).

**IT IS THEREOFRE ORDERED** that defendant Joshua Rodriquez's Motion to Terminate Defendant's Term of Supervised Release (Doc. 78) is denied.

**IT IS SO ORDERED.**

**Dated this 27th day of January, 2025, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**